Steven J. Nataupsky (CA SBN 155913*)*
steven.nataupsky@knobbe.com
Lynda J. Zadra-Symes (CA SBN 156511)
lynda.zadrasymes@knobbe.com
Nicole R. Townes (CA SBN 272342)
nicole.townes@knobbe.com
Jacob R. Rosenbaum (CA SBN 313190)
jacob.rosenbaum@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff
MONSTER ENERGY COMPANY

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONSTER ENERGY COMPANY, a Delaware corporation, | ) Case No. 8:18-cv-00513 |
| | ) |
| Plaintiff, | ) **COMPLAINT FOR TRADEMARK** |
| | ) **INFRINGEMENT, TRADE DRESS** |
| v. | ) **INFRINGMENT, FALSE** |
| | ) **DESIGNATION OF ORIGIN,** |
| MONSTER MOVING, INC. a California corporation. | ) **TRADEMARK DILUTION, AND** |
| | ) **UNFAIR COMPETITION** |
| | ) |
| Defendant. | ) **DEMAND FOR JURY TRIAL** |
| | ) |

Plaintiff Monster Energy Company ("Plaintiff" or "Monster") hereby complains of Defendant Monster Moving, Inc. ("Defendant"), and alleges as follows:

## I.  JURISDICTION AND VENUE

1.     This is an action for 1) trademark infringement, trade dress infringement, and false designation of origin under 15 U.S.C. § 1125(a), 2) trademark infringement under 15 U.S.C. § 1114, 3) trademark dilution under 15 U.S.C. § 1125(c), 4) trademark dilution arising under California Business & Professions Code § 14247, 5) California common-law unfair competition, and 6) unfair competition arising under California Business & Professions Code §§ 17200, *et seq.*

2.     The Court has original subject matter jurisdiction over the claims that relate to trademark infringement, trade dress infringement, trademark dilution and false designation of origin pursuant to 15 U.S.C. §§ 1116 and/or 1121(a), and also pursuant to 28 U.S.C. §§ 1331 and 1338, as these claims arise under the laws of the United States.  The Court has supplemental jurisdiction over the claims in this Complaint which arise under state statutory and common law pursuant to 28 U.S.C. §§ 1338(b) and  1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

3.     This Court has personal jurisdiction over Defendant because Defendant has a continuous, systematic, and substantial presence within this Judicial District and within California.  Defendant's headquarters are located at 16541 Gothard St. Ste. 200, Huntington Beach, California 92647.  Defendant also has offices located throughout this Judicial District at 19232 Beach Blvd. Huntington Beach, California 92647, 22489 Forest Hill, Lake Forest, California 92630, and 17442 Blue Water Ct. Riverside, California 92503.  Defendant's business     addresses     can     be     found     on     Defendant's     website     at

https://monstermovingandstorage.com/contact/. Defendant sells, advertises, markets and promotes its services in California, including in this Judicial District. Defendant's website states that it "serve[s] customers throughout Orange County and Los Angeles." In addition, by committing acts of trademark infringement, trade dress infringement, trademark dilution, false designation of origin, and unfair competition in this Judicial District, including, but not limited to, by using infringing marks and designs in connection with the advertisement, marketing, promotion and rendering of services to customers in this Judicial District, Defendant's acts form a substantial part of the events or omissions giving rise to Monster's claims.

4.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and (c) at least because Defendant resides in this Judicial District and a substantial portion of the events complained of herein took place in this Judicial District.

## II.  THE PARTIES

5.     Monster is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 1 Monster Way, Corona, California 92879.

6.     Upon information and belief, Defendant Monster Moving, Inc. is a corporation organized and existing under the laws of the State of California, having a principal place of business at 16541 Gothard St., Suite 201, Huntington Beach, California 92647.

## III.  COMMON ALLEGATIONS FOR ALL CLAIMS OF RELIEF

### A.     Monster and Its Trademarks and Trade Dress

7.     Monster is a nationwide leader in the business of developing, marketing, selling, and distributing beverages. In addition to its numerous trademark registrations for beverages, Monster also owns trademark registrations for promoting sports and music events, clothing, sports gear and

1  helmets, among many other goods and services.

2      8.    In 2002, long before Defendant's acts described herein, Monster

3  launched its MONSTER ENERGY® drink brand, bearing its now-famous

4

5   ® ("Claw Icon"), MONSTER™, and MONSTER ENERGY® marks.

6      9.    In addition, since 2002, Monster has consistently used a distinctive

7  trade dress for its packaging and promotional materials, including a stylized font

8  for the mark MONSTER on a dark background, a bright contrasting accent

9  color, including bright green, and an overall aggressive, edgy theme, as shown

10  below (the "MONSTER Trade Dress").

11

12

13

14

15

16

17

18

19

20      10.    Monster's successful line of MONSTER™ drinks has grown to

21  include numerous other well-known products, the containers and packaging of

22  which are prominently marked with the MONSTER™ and Claw Icon marks.

23  The MONSTER™ line of drinks includes or has included, but is not limited to,

24  original Monster Energy® and Lo-Carb Monster Energy®; Monster Assault®;

25  Juice Monster® Khaos®, Juice Monster® Ripper®, Juice Monster® Pipeline

26  Punch®, and Juice Monster® Mango Loco; Ubermonster®; Monster Energy®

27  Gronk; Monster Energy® Import; Punch Monster® Baller's Blend and Punch

28  Monster® Mad Dog; Monster Energy Absolutely Zero®; Monster Energy Zero

Ultra®, Monster Energy Ultra Blue®, Monster Energy Ultra Red®, Monster Energy Ultra Sunrise®, Monster Energy Ultra Citron®, Monster Energy Ultra Black® and Monster Energy Ultra Violet®; Monster Rehab®, which is a line of tea-based non-carbonated energy drinks, which includes Monster's Monster Rehab® Tea + Orangeade + Energy, Monster Rehab® Tea + Pink Lemonade + Energy, Monster Rehab® Tea + Lemonade + Energy, Monster Rehab® Raspberry Tea + Energy, and Monster Rehab® Peach Tea + Energy; Java Monster®, which is a line of dairy based coffee plus energy drinks; Muscle Monster®, which is a line of energy shakes; Monster Energy Extra Strength Nitrous Technology®, which is a line of energy drinks with a blend of nitrous oxide and carbon dioxide to create a smoother energy drink; Espresso Monster™, which is an espresso beverage blended with milk and enhanced with Monster's energy blend; Monster Hydro™, which is a non-carbonated lightly sweetened refreshing energy drink with natural flavors; and [image: Claw Icon]® Monster Energy® which is a five ounce concentrated energy drink, among others (hereinafter, collectively referred to as the "MONSTER™ line of drinks").

11. Monster is also the owner of numerous trademark registrations for marks that incorporate its famous Claw Icon mark, MONSTER™ mark and/or MONSTER ENERGY® mark, for use in connection with beverages, nutritional supplements, clothing, sporting goods, promoting goods and services in the motorsports industry, and other products and services, including the following U.S. Trademark Registrations:

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| MONSTER ENERGY | 4,721,433 | Promoting goods and services in the sports, motorsports, electronic sports, and music industries through the distribution of printed, audio and visual promotional materials; promoting sports and music events and competitions for others | 03/12/2014 | 04/14/2015 |
|  | 3,908,601 | Clothing, namely, t-shirts, hooded shirts and hooded sweatshirts, sweat shirts, jackets, pants, bandanas, sweat bands and gloves; headgear, namely, hats and beanies | 04/02/2009 | 01/18/2011 |
|  | 3,914,828 | Sports helmets | 04/02/2009 | 02/01/2011 |
|  | 4,332,062 | Silicone wrist bands; Silicone bracelets; Jewelry, namely, bracelets and wristbands | 10/05/2012 | 05/07/2013 |
|  | 3,908,600 | Stickers; sticker kits comprising stickers and decals; decals | 04/02/2009 | 01/18/2011 |

-5-

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
|  | 3,923,683 | All purpose sport bags; All-purpose carrying bags; Backpacks; Duffle bags | 04/02/2009 | 02/22/2011 |
|  | 4,660,598 | Lanyards; Lanyards for holding whistles, keys, eyeglasses, sunglasses, mobile telephones, badges, identification cards, event passes, media passes, photographs, recording equipment, or similar conveniences | 08/26/2013 | 12/23/2014 |
|  | 4,865,702 | Nutritional supplements in liquid form; Non-alcoholic beverages, namely, carbonated soft drinks; carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; carbonated energy drinks and sports drinks | 02/02/2015 | 12/08/2015 |
| MONSTER ENERGY | 3,044,315 | Nutritional supplements in liquid form, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 05/23/2003 | 01/17/2006 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| MONSTER ENERGY | 3,057,061 | Fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 04/18/2002 | 02/27/2006 |
| M MONSTER ENERGY | 3,044,314 | Nutritional supplements in liquid form, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 05/23/2003 | 01/17/2006 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| M MONSTER ENERGY | 3,134,842 | Beverages, namely, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated energy or sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 05/07/2003 | 08/29/2006 |
| MONSTER ENERGY | 4,036,680 | Nutritional supplements in liquid form | 09/11/2007 | 10/11/2011 |
| MONSTER ENERGY | 4,036,681 | Non-alcoholic beverages, namely, energy drinks, excluding perishable beverage products that contain fruit juice or soy | 09/11/2007 | 10/11/2011 |
| MONSTER REHAB | 4,111,964 | Ready to drink tea, iced tea and tea based beverages; ready to drink flavored tea, iced tea and tea based beverages | 08/24/2011 | 03/13/2012 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| MONSTER REHAB | 4,129,288 | Nutritional supplements in liquid form<br><br>Beverages, namely, non-alcoholic non-carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; non-carbonated energy or sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf-stable; all the foregoing goods exclude perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 07/06/2010 | 04/17/2012 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| MUSCLE MONSTER | 4,376,796 | Nutritional supplements in liquid form<br><br>Beverages, namely, soft drinks; non-alcoholic and non-carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; non-carbonated energy or sports drinks; all the foregoing goods exclude perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 07/02/2010 | 07/30/2013 |
| MONSTER ASSAULT | 4,634,053 | Nutritional supplements in liquid form;<br><br>Vitamin fortified beverages; Non-alcoholic beverages, namely, energy drinks, energy drinks flavored with juice, sports drinks, all enhanced with vitamins, minerals, nutrients, proteins, amino acids, and/or herbs, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 11/15/2013 | 11/04/2014 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|------|----------|----------------|------------|-----------|
| JAVA MONSTER | 3,959,457 | Beverages, namely, soft drinks; non-carbonated energy drinks; non-carbonated sports drinks; soft drinks and non-carbonated energy drinks, all enhanced with vitamins, minerals, nutrients, amino acids, and/or herbs, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 12/8/2005 | 05/10/2011 |
| JAVA MONSTER | 5,018,111 | Ready to drink coffee, iced coffee and coffee based beverages; ready to drink flavored coffee, iced coffee and coffee based beverages | 03/15/2016 | 08/09/2016 |

-11-

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| UBERMONSTER | 4,234,456 | Nutritional supplements in liquid form;<br><br>Beverages, namely, carbonated soft drinks; nonalcoholic carbonated soft drinks and energy drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; carbonated energy drinks and sports drinks; all the foregoing goods exclude perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 07/09/2010 | 10/30/2012 |
| MONSTER ENERGY ABSOLUTELY ZERO | 5,013,706 | Nutritional supplements in liquid form;<br><br>Non-alcoholic beverages, namely, soft drinks, carbonated soft drinks, energy drinks and sports drinks; energy drinks and sports drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs | 01/20/2015 | 08/02/2016 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| LO-CARB MONSTER ENERGY | 3,852,118 | Nutritional supplements;<br><br>Non-alcoholic beverages, namely, energy drinks, drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs | 02/13/2009 | 09/28/2010 |
|  | 3,134,841 | Beverages, namely, carbonated soft drinks, carbonated soft drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated energy and sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 05/07/2003 | 08/29/2006 |
|  | 4,051,650 | Clothing, namely, t-shirts, hooded shirts and hooded sweatshirts, sweat shirts, jackets, pants, bandanas, sweat bands and gloves; headgear, namely hats and beanies | 07/28/2010 | 11/08/2011 |

-13-

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
|  | 4,011,301 | Sports helmets; video recordings featuring sports, extreme sports, and motor sports | 07/27/2010 | 08/16/2011 |
|  | 3,963,669 | All-purpose sport bags; all-purpose carrying bags; backpacks; duffel bags | 07/28/2010 | 05/17/2011 |
|  | 3,963,668 | Stickers; sticker kits comprising stickers and decals; decals; posters | 07/28/2010 | 05/17/2011 |
|  | 4,822,675 | Lanyards; Lanyards for holding whistles, keys, eyeglasses, sunglasses, mobile telephones, badges, identification cards, event passes, media passes, photographs, recording equipment, or similar conveniences | 8/25/2013 | 9/29/2015 |

-14-

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
|  | 2,903,214 | Drinks, namely, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated and non-carbonated energy or sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 05/07/2003 | 11/16/2004 |
|  | 3,434,821 | Nutritional supplements | 09/07/2007 | 05/27/2008 |
|  | 3,434,822 | Non-alcoholic beverages, namely, energy drinks, excluding perishable beverage products that contain fruit juice or soy | 09/07/2007 | 05/27/2008 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
|  | 4,721,432 | Promoting goods and services in the sports, motorsports, electronic sports, and music industries through the distribution of printed, audio and visual promotional materials; promoting sports and music events and competitions for others | 03/12/2014 | 04/14/2015 |
|  | 5,022,676 | Nutritional supplements in liquid form; Non-alcoholic beverages, namely, carbonated soft drinks; carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; carbonated energy drinks and sports drinks | 05/28/2014 | 08/16/2016 |

12.     Attached hereto as Exhibits A1-A34 are true and correct copies of Monster's trademark registrations identified in Paragraph 11 of this Complaint, which are hereby incorporated by reference.   Collectively, those registrations and trademarks, including all common law rights therein, are referred to as the "MONSTER Marks."

13.     Pursuant to 15 U.S.C. § 1065, U.S. Trademark Registration Nos. 3,044,314, 3,044,315, 3,057,061, 3,134,841, 3,134,842, 3,852,118, 3,959,457, 3,908,600, 3,908,601, 3,914,828, 4,036,680, 3,963,669, 3,963,668, 2,903,214, 3,434,821, and 3,434,822 are incontestable.

14.     Monster's MONSTER Marks and MONSTER Trade Dress are the

-16-

subject of substantial and continuous marketing and promotion by Monster. Since 2002, Monster has spent approximately $4.6 billion marketing and promoting its MONSTER Marks and MONSTER Trade Dress.  In 2017 alone, Monster spent $537 million dollars in advertising, promoting and marketing its brand, marks and trade dress.

15.    Monster has and continues to widely market and promote its MONSTER Marks and MONSTER Trade Dress in the industry and to consumers by displaying the marks and trade dress on billions of cans of its MONSTER™ drinks sold in the U.S.  Monster's promotional efforts also include – by way of example but not limitation – sponsorship of athletes, athletic teams, athletic competitions, concerts and live events around the world, widespread distribution of promotional and point of sale materials, product samplings, promotion in magazines and other industry publications, promotion on the MONSTER ENERGY® website and other Internet websites, and attendance at trade shows.  Virtually every marketing and promotional item uses the colors black and green.

16.    Shown below are true and accurate representative pictures illustrating just a few examples of Monster's MONSTER point of sale materials bearing its famous MONSTER Marks and/or MONSTER Trade Dress:




1
2
3
4
5
6
7
8
9
10
11




12    17.    Monster also uses vehicles, including but not limited to, semi-
13 trucks, and big rigs, wrapped with its famous MONSTER Marks and/or
14 MONSTER Trade Dress to promote its products and services, and in connection
15 with Monster sponsored events.   Examples of Monster's vehicles bearing
16 Monster's MONSTER Marks and/or MONSTER Trade Dress are shown below:

17
18
19
20
21
22
23
24
25
26
27
28





18.   Monster also frequently has consumer promotions and point of sale displays that feature promotional vehicles such as ATVs, jet skis, and motorcycles that bear its MONSTER Marks and MONSTER Trade Dress.  The MONSTER Marks and MONSTER Trade Dress have been featured on various other motor vehicles such as helicopters, motorboats, vans, trailers, tour buses, semi-trucks, UTVs, ATVs, motorhomes, RVs and the Gronk Bus (a party bus used by Monster sponsored athlete Rob Gronkowski, a professional football player who plays for the NFL's New England Patriots.)

19.   Monster also uses trucks wrapped with the MONSTER Marks and/or MONSTER Trade Dress to hand out sample products to potential consumers, and to ship its products nationwide.  Shown below are true and accurate representative photographs illustrating just a few examples of trucks bearing Monster's MONSTER Marks and MONSTER Trade Dress:





20.    Monster also has an established and versatile history in motorsports.  A major part of Monster's brand promotion focuses on racing and motorsports.  Monster sponsors or has sponsored a wide variety of motorsport athletes, teams, and/or activities, including, but not limited to, NASCAR, Formula 1, MotoGP, Moto2, Supercross, motocross, MXGP, MX2, SCORE International Off-Road Racing events including Baja 500 and Baja 1000, the Ultra4 Rock Racing series including the King of Hammers desert racing event, the UTV World Championships, drag racing, drifting, flat track, off road, rock racing, UTV racing, Buggy racing, rally, rallycross, snowmobile, speedway, stunt, superbike and freestyle motocross.

21.    On January 1, 2017, Monster became the title sponsor of NASCAR's premier series (formerly called the NASCAR Sprint Cup Series), which is now called the Monster Energy® NASCAR Cup Series.  Monster also became the official energy drink of NASCAR.  NASCAR is the second most watched sport in the U.S., with over 5 million fans watching each of the 41 races.  Below is the logo for the Monster Energy® NASCAR Cup Series:

1
2
3
4
5
6
7
8



9      22.    Monster also has sponsored and continues to sponsor numerous

10   athletes that compete in various classes of NASCAR racing.  For example, in

11   2011, Monster began its sponsorship of NASCAR driver Kyle Busch, who

12   holds several records in NASCAR racing and won the prestigious 2015 Sprint

13   Cup Series, the top racing series of NASCAR.  In 2015, Kyle Busch earned his

14   75th Xfinity Series win at Kansas Speedway racing for Joe Gibbs Racing in the

15   No. 54 MONSTER ENERGY® Toyota Camry.   In 2012, Monster added

16   sponsorship of Kyle's older brother, Kurt Busch, who is also a NASCAR driver

17   and winner of the 2010 All-Star Race and the 2004 Sprint Cup.  Monster also

18   sponsors the Stewart Haas Racing team with its current driver Kurt Busch who

19   drives the #41 Monster Energy/HAAS Automation Chevy.  The drivers' cars

20   prominently display the MONSTER Marks and MONSTER Trade Dress as

21   shown, for example, below:

22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22





23.     Monster also has been a long-time sponsor of Ricky Carmichael who transitioned from one of the world's greatest Supercross and Motocross racers to a NASCAR truck driver.  Carmichael prominently promotes Monster's MONSTER Marks and MONSTER Trade Dress.  An example of Monster's sponsorship of Carmichael is shown below:

23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12



13    24.    Monster also sponsors or has sponsored athletes and teams who
14 compete in other truck and car racing events, including, but not limited to, the
15 SCORE International Off-Road Racing Series, including the BAJA 500 and
16 BAJA 1000, the Ultra4 Rock Racing series including the King of Hammers
17 desert racing event, the Off-Road Championship event ("TORC"), The Best In
18 the Desert ("BITD") racing series, including, but not limited to, the MINT 400,
19 and the UTV World Championships.  Monster sponsors or has sponsored the
20 following teams that compete in truck and car racing events: the Terrible Herbst
21 Motorsports Team, Desert Assassins, AUX Racing, Camburg Racing, Duc
22 Innovations, the Stewart Haas racing team, the Mercedes AMG PETRONAS F1
23 Racing Team (formerly named the Mercedes GP Petronas Formula One Team)
24 that competes in the FIA Formula One World Championship Series with its
25 current team drivers 3-time Formula One World Champion, Lewis Hamilton
26 and Valterri Botts and former drivers Nico Rosberg and Michael Schumacher,
27 the Holden Racing Team, and the MONSTER ENERGY® X-Raid racing team.
28 Together, Lewis Hamilton and Nico Rosberg won 19 of the 21 FIA Formula

One races in 2016.   In addition, the Monster-sponsored Mercedes AMG PETRONAS F1 Racing Team previously included seven-time World Champion Michael Schumacher before Schumacher's retirement in 2012.   An example of Monster's sponsorships of athletes and teams who compete or have competed in car and truck racing events is shown below:





25.   As of 2015, Monster sponsors the Ultimate Fighting Championship ("UFC") as its official energy drink partner (excluding in Brazil).   The Claw Icon mark appears on the UFC's Octagon center canvas and the fighter gate vertical bumpers for all live UFC events and on the Octagon Girls uniforms, excluding those which take place in Brazil.   Some examples of Monster's

sponsorships in those areas are shown, for example, below:

 

26.     Monster sponsored athletes also compete or have competed in Professional Bull Riding, the Kentucky Derby, the National Football League and motorcycle racing events.   Specifically, Monster has sponsored Victor Espinoza and American Pharoah, who won the American Triple Crown and the Breeder's Cup Classic in 2015.   Monster also sponsors Rob Gronkowski, a professional football player who plays for the NFL's New England Patriots.   In 2011, Gronkowski set the NFL single-season record for touchdowns and receiving yards by a tight end and became the first tight end in NFL history to lead the conference in scoring.   Additionally, Monster sponsors UFC athletes who have held world championships, including Daniel Cormier, light heavyweight champion, Ronda Rousey, bantamweight champion and Conor McGregor, featherweight champion.

27.     Monster began sponsoring Tiger Woods in 2016.   Tiger Woods is one of the most successful and famous golfers in the world.   In his storied career, Woods has won fourteen major championships, including the prestigious Masters Tournament, the U.S. Open, the British Open Championship and the PGA Championship.

28.    In addition to sponsoring professional athletes and teams, since at least 2004, Monster has maintained an amateur athlete development program under the mark MONSTER ARMY™.  More than 376,000 amateur athletes in various extreme sports have applied to be accepted as part of the MONSTER ARMY™ through the MONSTER ARMY™ web site WWW.MONSTERARMY.COM.

29.    Monster supports members of the MONSTER ARMY™ in many different ways, but such support often includes assistance with clothing, gear, training, and travel.  Members of the MONSTER ARMY™ wear clothing and other gear branded with the MONSTER Marks and/or MONSTER Trade Dress in order to promote the MONSTER Marks and MONSTER Trade Dress during competition.  Further, Monster's MONSTER ARMY™ has a Facebook page at https://www.facebook.com/MonsterArmy.    The    MONSTER    ARMY™ Facebook page has more than 309,000 likes.

30.    When competing, or at public appearances, the sponsored athletes and team members almost always wear clothing or use equipment that prominently displays the MONSTER Marks and/or MONSTER Trade Dress. The sponsored athletes and team members are frequently shown drinking MONSTER™ drinks, which bear the MONSTER Marks and the MONSTER Trade Dress.  The MONSTER Marks are also prominently displayed at the event venues, as well as on the clothing, helmets, and/or bikes, trucks or cars of riders or teams sponsored by Monster.  Through Monster's sponsorships, millions of consumers have been exposed to the MONSTER Marks and MONSTER Trade Dress when they watch the athletes and teams compete at events – many of which are televised nationwide and around the globe– or see athletes at public appearances or in Internet postings and magazines.

31.    Long before Defendant's acts described herein, Monster has used or licensed the use of its MONSTER Marks and/or MONSTER Trade Dress in

connection with products used in connection with or associated with motorized vehicles and motorsports, such as automotive wheels, replica cars, remote control cars, graphic kits for motorized vehicles, trailer hitch covers, tool boxes, gloves, stickers, sports helmets, bags, backpacks, and other related accessories. True and correct examples of authorized products bearing Monster's MONSTER Marks and MONSTER Trade Dress are shown below:





32.    Also, long before Defendant's acts described herein, Monster has used, and continues to use, its MONSTER Marks and/or MONSTER Trade Dress in connection with apparel and accessories, including, for example, t-

shirts, hooded shirts, hooded sweatshirts, sweatshirts, jackets, pants, bandanas, sweat bands, gloves and headgear.   True and correct examples of authorized hats, apparel and accessories bearing Monster's MONSTER Marks and MONSTER Trade Dress are shown below.









33.    Since 2002, Monster has sold and/or distributed millions of articles of clothing, including, but, not limited to, t-shirts, sweatshirts, outwear, athletic attire and hats.   These clothing items have been sold and/or distributed by Monster through giveaways, the MONSTER ARMY™ program, the Monster Gear program and Monster's distribution of products to retailers and distributors, among other channels.   In addition, since at least as early as 2006, Monster has licensed its MONSTER Marks for use in connection with clothing, accessories, and other items.   The clothing items prominently display the MONSTER Marks and/or MONSTER Trade Dress.

34.    Monster's MONSTER Marks and/or MONSTER Trade Dress have also received significant exposure in national publications.  For example, the marks and/or trade dress have been featured in *Fortune*, *Newsweek*, *Beverage World*, *Beverage Spectrum*, *Forbes* and/or *Business Week*, among other publications.

35.    Monster's MONSTER Marks and MONSTER Trade Dress receive extensive publicity and exposure through Monster's websites including its www.monsterenergy.com website and social media sites including Monster's Facebook, Twitter, Instagram and YouTube accounts.  As of June 2015, Monster's www.monsterenergy.com website was receiving over 50,000 visitors per day.  Monster's Facebook page has over 26 million "likes."  Monster's Instagram page has over 4.4 million followers and Monster's Twitter page has over 3.3 million followers.  Monster's YouTube page has over 239 million views.  Monster's MONSTER Marks and MONSTER Trade Dress are displayed on these websites and social media pages.

36.    Monster's MONSTER™ line of drinks has achieved substantial commercial success.  Retail sales now exceed 3 billion cans per year, with estimated retail sales at approximately $6 billion per year.  Monster's MONSTER™ brand has established itself as the best-selling energy drink brand in the United States by unit volume.  While Monster continues to expand its successful MONSTER™ line of drinks, Monster's best-selling drink is still the original Monster Energy® drink, which prominently features the MONSTER Marks and MONSTER Trade Dress.

37.    As a result of Monster's substantial use and promotion of its MONSTER Marks and MONSTER Trade Dress, the marks and trade dress have acquired great value as specific identifiers of Monster's products and services and serve to identify and distinguish Monster's products and services from those of others.  Customers in this Judicial District and elsewhere readily recognize

the MONSTER Marks and the MONSTER Trade Dress as distinctive designations of the origin of Monster's MONSTER brand of products, services and promotional items.  The MONSTER Marks and MONSTER Trade Dress are intellectual property assets of enormous value as symbols of Monster and its quality products and services, reputation, and goodwill.

**B.    Defendant's Infringing Activities**

38.    Defendant is engaged in the business of providing moving and storage services.    Defendant    owns    and    operates    the    website https://monstermovingandstorage.com/ and maintains the Facebook account https://www.facebook.com/Monster-Moving-409548922442124/, and twitter profile https://twitter.com/MonsterMovingOC.

39.    Without permission or consent from Monster, Defendant has sold and is offering for sale services in connection with the trademarks MONSTER

MOVING,                , and/or                                  and a trade dress that is confusingly similar to the MONSTER Trade Dress.  Specifically, Defendant has attempted to falsely associate itself with Monster and create a likelihood of confusion by using marks and trade dress confusingly similar to Monster's MONSTER Marks and MONSTER Trade Dress on its trucks, employee uniforms, website and social media pages.

40.    Upon information and belief, Defendant previously operated under the name "BEST MOVING SERVICE" and used a red and white color scheme for its moving trucks, as shown below.

-31-





41.     Defendant thereafter shifted its promotion and marketing over time in an attempt to trade off Monster's goodwill.  Defendant changed its name from BEST MOVING SERVICE to MONSTER MOVING.  Defendant also began using the color green and the color combination green and black in connection with its MONSTER MOVING mark.  Defendant uses a shade of green that is almost identical to the green used by Monster.  In addition, Defendant began using the stylized MONSTER MOVING mark which displays MONSTER in an edgy, aggressive font similar to the font and stylization used

-32-

for Monster's MONSTER Marks and includes a large stylized letter "M", which is similar to MEC's use of its Claw Icon mark with its MONSTER Marks. Below is an image of one of Defendant's current moving trucks:



42.     In a further attempt to associate itself with Monster, Defendant also changed its employee uniforms to be predominantly black and green.   Upon information and belief, below are images of Defendant's current employee uniform:

\




43.    Defendant has also used an "M" design almost identical to Monster's Claw Icon mark in connection with the MONSTER Mark in an aggressive, edgy font and the colors black and green, as shown in the image below previously taken from Defendant's Facebook page.



44.    Upon information and belief, Defendant was aware of Monster, the MONSTER Marks and the MONSTER Trade Dress when Defendant commenced its infringing activities.  Moreover, Defendant has been aware of the MONSTER Marks and the MONSTER Trade Dress since at least as early as June 6, 2017 when Monster sent the first of several cease and desist letters to Defendant regarding its infringing activities complained of herein.  Despite

receiving cease and desist letters from Monster on June 6, 2017, August 8, 2017 and November 22, 2017, Defendant has persisted with its infringing conduct.

45.    Without permission or consent from Monster, Defendant has infringed Monster's MONSTER Marks, and MONSTER Trade Dress in interstate commerce by promoting, advertising, selling, and/or offering to sell its services using marks, including the MONSTER MOVING, , and  marks, and a trade dress that is confusingly similar to the MONSTER Trade Dress.

46.    Upon information and belief, Defendant's actions alleged herein are intended to cause confusion, mistake, or deception as to the source of Defendant's services and are intended to cause consumers and potential customers to believe that Defendant's business and the services that it offers are associated with Monster or Monster's MONSTER family of products or services, when they are not.

47.    Indeed, Defendant has a duty to avoid confusion with Monster, the MONSTER Marks, and MONSTER Trade Dress because Defendant entered the market after Monster.    Nevertheless, Defendant has purposely promoted, marketed, and/or rendered its services in a manner that causes a likelihood of confusion with Monster, the MONSTER Marks, and MONSTER Trade Dress.

48.    In addition, Defendant's infringing conduct has resulted in confusion.  At least one person has inquired to an employee of Monster whether Defendant is associated with Monster and its products and services.    This confusion causes substantial injury to Monster's business reputation and goodwill.

49.    By virtue of the acts complained of herein, Defendant has created a likelihood of injury to Monster's business reputation and goodwill, caused a

likelihood of consumer confusion, mistake, and deception as to the source of origin or relationship of Monster's goods and services and Defendant's services, and has otherwise competed unfairly with Monster by unlawfully trading on and using Monster's MONSTER Marks and MONSTER Trade Dress without Monster's permission or consent.

50. Upon information and belief, Defendant's acts complained of herein are willful and deliberate.

51. Defendant's acts complained of herein have caused damage to Monster in an amount to be determined at trial, and such damages will continue to increase unless Defendant is enjoined from its wrongful acts and infringement.

52. Defendant's acts complained of herein have caused Monster to suffer irreparable injury to its business. Monster will suffer substantial loss of goodwill and reputation unless and until Defendant is preliminarily and permanently enjoined from the wrongful acts complained of herein.

## IV.  FIRST CLAIM FOR RELIEF
### (Trademark Infringement, Trade Dress Infringement, and False Designation of Origin Under 15 U.S.C. § 1125(a))

53. Monster hereby repeats, realleges, and incorporates by reference paragraphs 1-52 of this Complaint as though fully set forth herein.

54. This is an action for trademark infringement, trade dress infringement, and false designation of origin arising under 15 U.S.C. § 1125(a).

55. As a result of the widespread use and promotion of Monster's MONSTER Marks, and MONSTER Trade Dress, the marks and trade dress have acquired strong fame and secondary meaning to consumers and potential customers, in that consumers and potential customers have come to associate the MONSTER Marks and the MONSTER Trade Dress with Monster.

56.   Defendant has infringed the MONSTER Marks and the MONSTER Trade Dress, and created a false designation of origin, by using in commerce, without Monster's permission, the confusingly similar MONSTER MOVING,                    , and                    marks and a trade dress confusingly similar to the MONSTER Trade Dress in connection with the advertisement, offering for sale, and/or sale of Defendant's services.

57.   Defendant's actions are likely to cause confusion and mistake, or to deceive as to the affiliation, connection, or association of Monster with Defendant, and/or as to the origin, sponsorship, or approval of Defendant's services or Defendant's commercial activities, in violation of 15 U.S.C. § 1125(a).

58.   Upon information and belief, Defendant did so with the intent to trade upon Monster's reputation and goodwill by causing confusion and mistake among customers and the public and to deceive the public into believing that Defendant's services are associated with, sponsored by or approved by Monster, when they are not.

59.   Upon information and belief, Defendant had actual knowledge of Monster's ownership and prior use of the MONSTER Marks and the MONSTER Trade Dress, and without the consent of Monster, willfully violated 15 U.S.C. § 1125(a).

60.   Defendant, by its actions, has damaged Monster in an amount to be determined at trial.

61.   Defendant, by its actions, has irreparably injured Monster.  Such irreparable injury will continue unless Defendant is preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## V.  **SECOND CLAIM FOR RELIEF**

### (Trademark Infringement Under 15 U.S.C. § 1114)

62.    Monster hereby repeats, realleges, and incorporates by reference paragraphs 1-61 of this Complaint as though fully set forth herein.

63.    This is a claim for trademark infringement arising under 15 U.S.C. § 1114.

64.    Monster owns valid and enforceable federally registered trademarks for the MONSTER Marks, including at least the registrations listed in paragraph 11 above.

65.    Defendant has used in commerce, without permission from Monster, colorable imitations, and/or confusingly similar marks to Monster's MONSTER Marks that are the subject of at least Monster's U.S. Trademark Registration Nos. 4,721,433, 3,908,601, 3,914,828, 4,332,062, 3,908,600, 3,923,683, 4,660,598, 4,865,702, 3,044,315, 3,057,061, 3,044,314, 3,134,842, 4,036,680, 4,036,681, 4,111,964, 4,129,288, 4,376,796, 4,634,053, 3,959,457, 5,018,111, 4,234,456, 5,013,706, 3,852,118, 3,134,841, 4,051,650, 4,011,301, 3,963,669, 3,963,668, 4,822,675, 2,903,214, 3,434,821, 3,434,822, 4,721,432, and 5,022,676 in connection with the advertising, marketing, and/or promoting of Defendant's services.  Such use is likely to cause confusion or mistake, or to deceive.

66.    Upon information and belief, the activities of Defendant complained of herein constitute willful and intentional infringements of Monster's registered marks, and Defendant acted with the intent to trade upon Monster's reputation and goodwill by causing confusion and mistake among customers and the public and to deceive the public into believing that Defendant's services are associated with, sponsored by, originated from, or are approved by, Monster, when they are not.

67.    Upon information and belief, Defendant had actual knowledge of Monster's ownership and prior use of the MONSTER Marks, and has willfully violated 15 U.S.C. § 1114.

68.    Defendant, by its actions, has damaged Monster in an amount to be determined at trial.

69.    Defendant, by its actions, has irreparably injured Monster.  Such irreparable injury will continue unless Defendant is preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## VI.   THIRD CLAIM FOR RELIEF
### (Federal Dilution of the Claw Icon Mark Under 15 U.S.C. § 1125(c))

70.    Monster hereby repeats, realleges, and incorporates by reference paragraphs 1-69 of this Complaint as though fully set forth herein.

71.    This is a claim for federal trademark dilution arising under 15 U.S.C. § 1125(c).

72.    Products and services sold under Monster's Claw Icon mark have been widely advertised, promoted, and distributed to the purchasing public throughout the United States and the world.  By virtue of the wide renown acquired by Monster's Claw Icon mark, coupled with the national and international distribution and extensive sales of various products distributed under the Claw Icon mark, the Claw Icon mark is famous and became so prior to Defendant's acts complained of herein.

73.    Defendant's unauthorized and commercial use of the marks described herein in connection with the advertisement, offering for sale and sale of Defendant's services has caused and is likely to continue to cause dilution of the distinctive quality of Monster's famous Claw Icon mark.

74.    Defendant's acts are likely to blur, tarnish, injure, or trade upon Monster's business, reputation or goodwill, and to deprive Monster of the

ability to control the use of its Claw Icon mark and quality of products and services associated herewith.

75.     Upon information and belief, Defendant's dilution has been willful and deliberate.

76.     Defendant, by its actions, has damaged Monster in an amount to be determined at trial.

77.     Defendant, by its actions, has irreparably injured Monster.  Such irreparable injury will continue unless Defendant is preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## VII.  FOURTH CLAIM FOR RELIEF

### (Dilution of the Claw Icon Mark Under California Business & Professions Code § 14247)

78.     Monster realleges Paragraphs 1-77, as if fully set forth herein.

79.     This is an action for dilution under California Business & Professions Code § 14247.

80.     Monster's Claw Icon mark is famous and distinctive, and became famous prior to the acts of the Defendant complained of herein.

81.     Defendant's   unauthorized   commercial   use   of   the   marks  and  in connection with the advertisement, offering for sale and/or sale of Defendant's services is likely to cause dilution of the distinctive quality of the famous Claw Icon mark.

82.     Defendant's acts are likely to blur, tarnish, injure or trade upon Monster's business reputation or goodwill, and to deprive Monster of the ability to control its Claw Icon mark.

-40-

83.     Defendant's aforementioned acts have injured Monster and damaged Monster in an amount to be determined at trial.

84.     By its actions, Defendant has irreparably injured Monster.  Such irreparable injury will continue unless Defendant is enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## VIII.  FIFTH CLAIM FOR RELIEF

### (Unfair Competition Under California Business & Professions Code §§ 17200 *et seq.*)

85.     Monster hereby repeats, realleges, and incorporates by reference paragraphs 1-84 of this Complaint as though fully set forth herein.

86.     This is an action for unfair competition under California Business & Professions Code §§ 17200, *et seq.*

87.     By virtue of the acts complained of herein, Defendant has intentionally caused a likelihood of confusion among consumers and the public and has unfairly competed in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*

88.     Defendant's acts complained of herein constitute trademark infringement, trade dress infringement, unfair competition, and unlawful, unfair, malicious or fraudulent business practices, which have injured and damaged Monster.

89.     Defendant, by its actions, has irreparably injured Monster.  Such irreparable injury will continue unless Defendant is preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## IX.  SIXTH CLAIM FOR RELIEF

### (California Common Law Unfair Competition)

90.     Monster hereby repeats, realleges, and incorporates by reference

paragraphs 1-89 of this Complaint as though fully set forth herein.

91.    This is an action for unfair competition under the common law of the State of California.

92.    Defendant's acts complained of herein constitute trademark infringement and unfair competition under the common law of the State of California.

93.    By virtue of the acts complained of herein, Defendant has willfully and intentionally caused a likelihood of confusion among the purchasing public in this Judicial District and elsewhere, thereby unfairly competing with Monster in violation of the common law of the State of California.

94.    Defendant's aforementioned acts have damaged Monster in an amount to be determined at trial.

95.    Defendant has irreparably injured Monster.  Such irreparable injury will continue unless Defendant is preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

96.    Defendant's willful acts of unfair competition under California common law constitute fraud, oppression and malice.  Accordingly, Monster is entitled to exemplary damages pursuant to Cal. Civ. Code Section § 3294(a).

## X.  PRAYER FOR RELIEF

WHEREFORE, Monster prays for judgment against Defendant as follows:

1.    That the Court render a final judgment in favor of Monster and against Defendant on all claims for relief alleged herein;

2.    That the Court render a final judgment that Defendant has violated the provisions of 15 U.S.C. § 1125(a) by willfully infringing the MONSTER Marks and the MONSTER Trade Dress by using a false designation of origin, through the marketing, sale and promotion of Defendant's services;

3.     That the Court render a final judgment that Defendant has willfully violated the provisions of 15 U.S.C. § 1114 by infringing Monster's trademark rights in at least the marks that are the subject of U.S. Trademark Registration Nos. 4,721,433, 3,908,601, 3,914,828, 4,332,062, 3,908,600, 3,923,683, 4,660,598, 4,865,702, 3,044,315, 3,057,061, 3,044,314, 3,134,842, 4,036,680, 4,036,681, 4,111,964, 4,129,288, 4,376,796, 4,634,053, 3,959,457, 5,018,111, 4,234,456, 5,013,706, 3,852,118, 3,134,841, 4,051,650, 4,011,301, 3,963,669, 3,963,668, 4,822,675, 2,903,214, 3,434,821, 3,434,822, 4,721,432, and 5,022,676;

4.     That the Court render a final judgment declaring that Defendant has violated and willfully violated the provisions of 15 U.S.C. § 1125(c) by diluting Monster's famous Claw Icon mark;

5.     That the Court render a final judgment declaring that Defendant has violated and willfully violated the provisions of California Business & Professions Code §14247 by diluting Monster's famous Claw Icon mark;

6.     That the Court render a final judgment declaring that Defendant has violated California Business and Professions Code §§ 17200, *et seq.* by committing trademark infringement, trade dress infringement and unfairly competing with Monster;

7.     That the Court render a final judgment declaring Defendant has violated California common law by unfairly competing with Monster;

8.     That Defendant, its agents, servants, employees, attorneys, successors, and assigns, and all other persons in active concert or participation with Defendant who receive actual notice of the injunction by personal service or otherwise, be forthwith preliminarily and permanently enjoined from:

a.    using   the   marks   MONSTER,   MONSTER   MOVING,

  , or in connection with the advertising, promotion, or sale of Defendant's products or services, using any of the MONSTER Marks, or MONSTER Trade Dress, in advertising or promoting Defendant's services or products including on Defendant's moving trucks, using any designs substantially similar to Monster's Claw Icon mark and/or using confusingly similar variations of any of the MONSTER Marks, or MONSTER Trade Dress in any manner that is likely to create the impression that Defendant's services or products originate from Monster, are endorsed by Monster, or are connected in any way with Monster;

b.    filing any applications for registration of any trademarks, trade dress, copyrights or designs confusingly similar to the MONSTER Marks or MONSTER Trade Dress;

c.    otherwise infringing any of the MONSTER Marks, or any of Monster's other trademarks, or Monster's MONSTER Trade Dress;

d.    falsely designating the origin of Defendant's services;

e.    unfairly competing with Monster in any manner whatsoever; and

f.    causing a likelihood of confusion or injury to Monster's business reputation;

9.    That Defendant be directed to file with this Court and serve on Monster within thirty (30) days after the service of the injunction, a report, in writing, under oath, setting forth in detail the manner and form in which they have complied with the injunction pursuant to 15 U.S.C. § 1116;

10. That Defendant be required to account to Monster for any and all profits derived by Defendant and all damages sustained by Monster by virtue of Defendant's acts complained of herein;

11. That Defendant be ordered to pay over to Monster all damages which Monster has sustained as a consequence of the acts complained of herein, subject to proof at trial, together with prejudgment and post-judgment interest;

12. That this case be deemed exceptional and the amount of the damages be trebled and that the amount of profits be increased by as many times as the Court deems appropriate, pursuant to 15 U.S.C. § 1117;

13. That Monster be awarded exemplary damages from Defendant pursuant to Cal. Civ. Code. § 3294;

14. That Defendant's actions be deemed willful;

15. That an award of reasonable costs, expenses, and attorneys' fees be awarded to Monster pursuant to at least 15 U.S.C. § 1117;

16. That Defendant be required to deliver and destroy all devices, literature, advertising, goods, vehicle wraps and other unauthorized materials bearing the MONSTER MOVING, , or  marks, any of the MONSTER Marks, MONSTER Trade Dress, or any confusingly similar marks, pursuant to 15 U.S.C. § 1118;

17. That Monster be awarded restitution and disgorgement; and

/ / /

/ / /

-45-

1    18.    That Monster be awarded such other and further relief as this Court

2  may deem just.

3                              Respectfully submitted,

4                              KNOBBE, MARTENS, OLSON & BEAR, LLP

5

6

7  Dated:  March 26, 2018        By:  /s/ *Lynda J. Zadra-Symes*

8                                    Steven J. Nataupsky
                                     Lynda J. Zadra-Symes
9                                    Nicole R. Townes
                                     Jacob R. Rosenbaum
10

11                                   Attorneys for Plaintiff,
                                     MONSTER ENERGY COMPANY
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## XI.  <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Monster Energy Company hereby demands a trial by jury on all issues so triable.

                              Respectfully submitted,

                              KNOBBE, MARTENS, OLSON & BEAR, LLP


Dated:  March 26, 2018        By: /s/ *Lynda J. Zadra-Symes*
                                  Steven J. Nataupsky
                                  Lynda J. Zadra-Symes
                                  Nicole R. Townes
                                  Jacob R. Rosenbaum

                              Attorneys for Plaintiff,
                              MONSTER ENERGY COMPANY

27158679

-47-